**AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 77–29.**

United States District Court, M. D. Pennsylvania.

June 15, 1979.

Metzger, Hafer, Keefer, Thomas & Wood
by James K. Thomas, II, Harrisburg, Pa.,
for plaintiff.

David E. Lehman, G. Thomas Miller, Harrisburg, Pa., for defendant.

## MEMORANDUM

HERMAN, District Judge.

This is an action brought by Aetna Casualty and Surety Company (Aetna), Plaintiff, against Nationwide Mutual Insurance Company (Nationwide), Defendant, with jurisdiction based upon diversity pursuant to 28 U.S.C. § 1332. The dispute arises out of an automobile accident and the denial of coverage by Defendant Nationwide to its insured William E. Cunnard.

*FINDINGS OF FACT*

1. Nationwide issued a policy of liability insurance to William E. Cunnard, an adult residing at R.D. # 5, Mechanicsburg, Pennsylvania, Policy No. 59–058879, in September of 1970.

2. The Nationwide policy, on or after June 9, 1970, described as the automobile insured under the policy, a 1960 Plymouth Sedan.

3. Cunnard purchased a 1958 Pontiac on or about August 14, 1970 from a private owner. He registered the car in his name and paid sales tax on that date.

4. The 1958 Pontiac was never identified as an insured automobile under the Nationwide policy, nor did Cunnard notify Nationwide of its purchase.

5. Before Cunnard purchased the 1958 Pontiac, he had had mechanical difficulties with the 1960 Plymouth; it had "gone out", and had valve and transmission problems and he felt he could not trust it to go anywhere.

6. When Cunnard bought the 1958 Pontiac he needed to have work done on it to get it running and have it inspected.

7. Cunnard obtained a separate license for the 1958 Pontiac and was intending to junk the deteriorating 1960 Plymouth.

8. Cunnard stopped driving the Plymouth before he got the Pontiac going, and had a co-worker at Capital Products take him to work during this time. At no time material to this action did Cunnard have more than one vehicle which was operable.

9. Cunnard had the needed repairs done to the 1958 Pontiac and secured a current state inspection for that vehicle.

10. Cunnard began driving the 1958 Pontiac on October 14, 1970 and stopped driving the 1960 Plymouth in October, 1970, before he began driving the 1958 Pontiac.

11. Cunnard allowed the state inspection sticker on the 1960 Plymouth to expire on October 31, 1970.

12. Cunnard continued to drive the 1958 Pontiac until December 6, 1970 and did not drive the 1960 Plymouth after early October.

13. On December 6, 1970 while Cunnard was driving the 1958 Pontiac, he was involved in a collision with a 1967 Ford owned by Carl I. Lisenbach, on the Trindle Road (Rt. 641) in Silver Springs Township, Cumberland County.

14. The accident occurred when the Cunnard vehicle crossed the center line of the two-lane highway and collided with the Lisenbach vehicle. From the facts of the accident, a prima facie claim of negligence lay against Cunnard.

15. Carl Lisenbach and Nadine Blocker, a passenger in his car, were both seriously injured in the accident.

16. Carl Lisenbach and his 1967 Ford vehicle were insured by Aetna Casualty and Surety Company under a policy of insurance. Said policy provided uninsured motorist coverage, in accordance with Pennsylvania law, with limits of $10,000. The Aetna policy also provided similar coverage for a second vehicle owned by Lisenbach, a 1965 Mercury.

17. After the accident Cunnard was in a body cast for eight weeks.

18. A claims adjuster for Nationwide, Paul J. Herb, visited Cunnard in the Carlisle hospital on December 14, 1970 to take a statement from Cunnard about the accident. Cunnard told the adjustor that he was driving the 1958 Pontiac and not the 1960 Plymouth at the time of the accident.

19. Cunnard was in pain and under sedation at the time the adjustor took the statement from him in the hospital on December 14, 1970.

20. The adjustor wrote out a statement which he had Cunnard sign but which Cunnard did not and could not read. At the time of the statement Cunnard told the adjustor that the Plymouth had a noisy rear end and that was the reason he took it out of service.

21. Cunnard signed the statement which indicated that both cars were inspected and that he had run the Plymouth. Although Nationwide's adjustor was told by Cunnard at the time the statement was taken that Cunnard had taken the 1960 Plymouth out of service, he failed to record that fact in the statement.

22. It was not true that the 1960 Plymouth was currently inspected and that he had run the 1960 Plymouth.

23. Cunnard told the adjustor that the 1958 Pontiac was a replacement car.

24. Cunnard had the 1960 Plymouth repaired and operating for a few months after the accident and then sold it for $25.00.

25. Cunnard never notified Nationwide that he had changed cars.

26. The adjustor never went to Cunnard's house to interview him after he got home from the hospital, nor did the adjustor go to examine the 1960 Plymouth.

27. Nationwide, after investigation, on December 22, 1970, sent a letter to Cunnard advising that the Nationwide policy provided coverage for a 1960 Plymouth, and not the 1958 Pontiac and that coverage was being denied.

28. Cunnard's policy with Nationwide contained the following clause in Section IV relating to covered automobiles:

"(4) Newly Acquired Automobile—an automobile, ownership of which is acquired by the Named Insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the Company insures all automobiles owned by the Named Insured and such spouse on the date of its delivery, and (ii) the Named Insured or such spouse notifies the Company within thirty days following such delivery date; but such notice is not required under Coverages E, F and division 1 of Coverage G if the newly acquired automobile replaces an owned automobile covered by this policy."

29. Coverage E provides:

"Property Damage Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property."

30. Coverage F provides:

"Bodily Injury Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

31. Coverage G provides:

"Medical Payments

To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthesis devices and necessary ambulance, hospital professional nursing and funeral services:

Division 1. To or for each person who sustains bodily injury sickness or disease, caused by accident, while in or upon or alighting from the automobile, provided the automobile is being used by the Named Insured or his spouse if a resident of the same household, or with the permission of either: or

Division 2. To or for each Insured who sustains bodily injury, sickness or disease, caused by accident, while in or upon or while entering into or alighting from or through being struck by, an automobile."

32. Cunnard called Nationwide to protest the denial of coverage on May 12, 1971.

33. Nationwide was subsequently contacted by William F. Martson, counsel for Cunnard, advising again that the 1958 Pontiac did actually replace the 1960 Plymouth.

34. Nationwide's denial of coverage was based upon the fact that Cunnard retained ownership and possession of the 1960 Plymouth and disregarded his intentions with respect to replacement and the operational capabilities of that vehicle.

35. At no time after Cunnard and his counsel protested the denial of coverage did Nationwide conduct any additional investigation. Instead Nationwide relied upon the police report, the title documents, the statement taken from Cunnard in the hospital on December 14, 1970, and the telephone calls.

36. Nationwide failed to conduct any investigation to determine whether the 1960 Plymouth had in fact been retired from service prior to the 1958 Pontiac being made operational; it failed to interview neighbors; it failed to inspect the 1960 Plymouth; and it never attempted to ascertain whether the inspection had in fact expired on the 1960 Plymouth on October 31, 1970.

37. Nationwide's investigation was inadequate and Nationwide disregarded the Pennsylvania law with respect to a "replacement vehicle".

38. In issuing its denial of coverage to Cunnard Nationwide disregarded facts it could have found through reasonable investigation, as well as Pennsylvania law concerning replacement vehicles.

39. Aetna subsequently was compelled to pay Nadine Blocker's claim under its uninsured motorist coverage, *Blocker v. Aetna Casualty & Surety Co.*, 95 Dauphin 436 (1973), and then brought this action to recover $27,995.04 in damages and attorneys' fees incurred on the theory that Nationwide's denial of coverage was wrongful.

40. Aetna made the following fair and reasonable payments on the dates indicated:

| | |
|---|---:|
| February 16, 1973 to Nadine Blocker | $10,000.00 |
| July 25, 1973 to Carl Linsenbach | 4,407.69 |
| December 28, 1973 to Metzger, Hafer, | |
| Keefer, Thomas and Wood | 2,047.37 |
| June 2, 1975 to Nadine Blocker | 10,000.00 |
| July 3, 1975 to Metzger, Hafer, | |
| Keefer, Thomas and Wood | 5,947.67 |

41. All payments were proximately caused by Nationwide's denial of coverage to its insured, William E. Cunnard.

42. There is no issue as to the propriety of the underlying actions or claims for payments and subsequent payments.

43. The limit of liability coverage under the Nationwide policy was $10,000 for each claimant for personal injuries not to exceed $20,000 per accident.

44. Nadine Blocker by her counsel made demand upon Aetna for recovery of the limits of Uninsured Motorist coverage under the Lisenbach policy. Because two separate vehicles were insured demand was made for the $10,000 limits as to each insured vehicle.

45. Aetna investigated the question of insurance coverage for Cunnard under the Nationwide policy. Its investigation and analysis of the coverage question are set forth on memoranda prepared April 7, 1971, May 26, 1971 and June 1, 1971.

46. Aetna did not communicate with Nationwide on the issue of insurance coverage for Cunnard.

47. Following Nationwide's letters of July 16, 1971, reiterating denial of coverage, counsel for Nadine Blocker demanded arbitration pursuant to the uninsured motorist provisions of the Aetna policy.

48. At issue in the arbitration proceeding was the question of "stacking" uninsured motorist benefits. The arbitrators found in favor of Blocker. Aetna appealed the award to Dauphin County Court which confirmed the arbitrator's award. Aetna appealed to the Superior Court which initially decided 3–3 and, upon subsequent reargument, affirmed the lower court 4–3.

49. Aetna was required to pay as uninsured motorist benefits $20,000 to Nadine Blocker and incurred counsel fees and expenses in the amount of $7,995.04 in its defense of the Blocker claim. The amounts charged for legal services were fair and reasonable and were paid by Aetna.

50. Aetna was required to pay the sum of $4,407.69 as uninsured motorist benefits to Carl Lisenbach on or about July 25, 1973.

*DISCUSSION*

This is a diversity action claiming an amount in controversy in excess of ten thousand dollars exclusive of interest and costs. The dispute arises out of an automobile accident which occurred on December 6, 1970. William E. Cunnard, who was driving a 1958 Pontiac, crossed the center line of a two-lane highway and collided with a vehicle owned by Carl L. Lisenbach in which Nadine Blocker was a passenger. Both Lisenbach and Blocker were seriously injured, and from the facts of the accident, a prima facie claim of negligence lay against Cunnard. Lisenbach was insured by Aetna Casualty and Surety Company, Plaintiff in this action, with a policy which provided for uninsured motorist coverage in accordance with Pennsylvania law with limits of $10,000. The Aetna policy also provided coverage for a second vehicle owned by Lisenbach.

Nationwide Mutual Insurance Company, Defendant in this action, had issued a policy of liability insurance to Cunnard in September of 1970. The Nationwide policy, on or after June 9, 1970 described a 1960 Plymouth sedan as the automobile insured under the policy. Nationwide took the position that the 1958 Pontiac Cunnard was driving at the time of the accident was not an insured automobile within the terms of its policy with Cunnard. Cunnard took the position that the vehicle was a replacement vehicle and was covered under the terms of the Nationwide policy. Because Nationwide refused coverage, Lisenbach and Blocker proceeded against Aetna under Lisenbach's uninsured motorist coverage. See, 40 P.S. § 2000. Aetna paid $20,000 to Nadine Blocker and $4,407.69 to Carl Lisenbach. Aetna also paid $7,995.04 in attorney's fees defending against the Blocker

claim. There is no issue as to the propriety of the underlying actions or claims for payments and subsequent payments.

Aetna asserts that Nationwide wrongfully denied coverage to Cunnard and was negligent in their investigation of the Cunnard assertion of coverage. Aetna further asserts that as a result of the wrongful denial of coverage Aetna has been forced to pay $24,407.69 in uninsured motorist claims and $7,995.04 in attorney's fees defending one of the uninsured motorist claims. Aetna's position is that Nationwide should now indemnify Aetna for those amounts Aetna paid.

■ We find from the facts presented that Nationwide's denial of coverage was improper, and that the 1958 Pontiac automobile operated by Cunnard at the time of the accident was an insured automobile within the terms of the automobile policy issued by Nationwide. In interpreting the Nationwide policy with respect to Cunnard, it is a general rule of insurance contract construction that doubts as to the extent of coverage under the contract's terms should be resolved in favor of the insured. *Mohn v. American Casualty Co. of Reading*, 458 Pa. 576, 326 A.2d 346 (1971). Cunnard's policy with Nationwide provided in Section IV (4) for coverage for a replacement vehicle and the policy specifically notes that where the newly acquired automobile replaces an owned automobile covered by the policy, no notice is required in order for the bodily injury liability protection to be in force. The facts in this case show that Cunnard purchased a 1958 Pontiac on or about August 14, 1970 from a private owner and registered the car in his name and paid sales tax on that date. The 1958 Pontiac was never identified as an insured automobile under the Nationwide policy, nor did Cunnard notify Nationwide of its purchase. Before Cunnard purchased the 1958 Pontiac he had had mechanical difficulties with the 1960 Plymouth. When Cunnard bought the 1958 Pontiac he needed to have work done on it to get it running and to have it inspected. Cunnard obtained a separate license for the 1958 Pontiac and was intend-

ing to junk the deteriorating 1960 Plymouth because he felt he could not trust it anymore. The 1960 Plymouth quit running on or about October 1, 1970. Cunnard was forced to have a fellow employee take him to work until October 14, 1970 at which time Cunnard had the needed repairs done to the 1958 Pontiac and secured a current state inspection for that vehicle. He allowed the state inspection sticker on the nonfunctional 1960 Plymouth to expire on October 31, 1970. Cunnard continued to drive the 1958 Pontiac until the accident on December 6, 1970 and did not drive the 1960 Plymouth after early October. At no time were both cars operational at the same time.

Nationwide's defense is based upon the fact that Cunnard's replacement vehicle was purchased more than three months before the date of the accident and that the Plymouth was operable. We have already found from the facts presented that the 1958 Pontiac was not operational until after the 1960 Plymouth ceased to be operational. We have also found that the 1960 Plymouth continued not to be operational until some time after the accident when it was worked on and again provided with a current inspection sticker to replace the one that had been allowed to expire.

■ Both parties agree that the law in Pennsylvania on replacement vehicles is found in *Filaseta v. Pennsylvania Threshermen & Farmers' Mutual Insurance Co.,* 209 Pa.Super. 322, 228 A.2d 18 (1967). In *Filaseta* the insured owned two trucks. One of the vehicles broke down and he purchased a second vehicle although retaining ownership of the disabled vehicle. After the first truck became disabled, it was repaired and driven to a service station where it was placed for sale. As stated in *Filaseta*, it is enough that the vehicle recited in the policy was out of service because of necessary repairs at the time the new vehicle was acquired and that the circumstances were such that a jury could find that, in fact, it had been replaced, as the insurer could have inserted a provision that the automatic coverage should not attach to a

replacing vehicle until the insured had parted with the ownership and possession of the replaced vehicle. Under the law as reviewed in *Filaseta* and the facts as we have found them, we hold that Cunnard's 1958 Plymouth was a replacement vehicle within the meaning of the Nationwide policy. and was a covered automobile.

Having found that the 1958 Pontiac was a replacement automobile covered under Cunnard's Nationwide policy, we also find that Nationwide was negligent in its investigation and denial of coverage to Cunnard. Nationwide knew or should have known based upon a reasonable investigation that Cunnard had retired the 1960 Plymouth for mechanical reasons, that it was not inspected, that it had not been driven and that he intended to and did use the 1958 Pontiac as a replacement vehicle. Nationwide also knew or should have known that the law as presented in *Filaseta* would allow coverage as a replacement vehicle even though the insured continued in ownership and possession of the described vehicle contra to the position taken in Nationwide's denial of coverage letters of December 22, 1970 and July 16, 1971. Nationwide further was not justified in relying without more thorough investigation upon a statement written by the adjustor that the adjustor had Cunnard sign within one week after the accident while Cunnard was still in the hospital in a body cast and was in pain and under sedation.

In our memorandum and order of November 4, 1977 in ruling upon Nationwide's motion to dismiss this action we held that a secondary insurer has a cause of action against the primary insurer for wrongful refusal to provide coverage. To hold otherwise would put an undue strain on Pennsylvania's uninsured motorist statute, 42 P.S. § 2000, for it would enable the primary insurer to impose severe financial burdens on the secondary insurer whose presence is now all but inevitable under the uninsured motorist statute simply by denying the existence of coverage. It is for this reason that although no Pennsylvania cases have been cited to us as authority for this position, we believe the Pennsylvania courts, if faced with the question would so hold. To do otherwise would in effect reverse the roles of the primary and secondary insurer and reduce the likelihood of a primary insurer acknowledging its coverage. We find support for this position in the factually analogous case of *Indiana Lumbermen's Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company*, 511 S.W.2d 713 (1973). In that action the defendant insurance company denied liability coverage to its insured because the insured was operating a temporary substitute automobile while the described automobile was mechanically inoperable. The court determined that under the terms of the policy the denial of coverage was improper. The court also found that as a result of the denial of liability coverage by the Defendant State Farm Mutual, the plaintiff, Indiana Lumbermen's Mutual was forced to pay uninsured motorist damages to the injured claimant. The court determined that the uninsured motorist insurer plaintiff had a right of indemnity against the defendant because the defendant was primarily liable to pay damages caused by the negligence of its insured and had improperly denied coverage.

The fact that Plaintiff did not file a declaratory judgment action is not a defense in this matter. So too could Nationwide have filed a declaratory judgment action. After the demand was rightfully made for arbitration, Plaintiff was unable to stay the arbitration proceedings for a declaratory judgment action to be filed. *St. Paul Mercury Insurance Company v. American Arbitration Association*, 425 Pa. 548, 229 A.2d 858 (1967); *Hartford Insurance Group v. Kassler*, 227 Pa.Super. 47, 324 A.2d 521 (1974).

Plaintiff is entitled to recover the entire amount of its damages and is not limited to any policy limit which the Defendant may have had in effect with its insured, William Cunnard. Because of the Defendant's wrongful denial of coverage, the Plaintiff was forced to defend the uninsured motorist claim for "stacked" cover-

age. Plaintiff's right of indemnification is based upon the fact that the Defendant wrongfully denied coverage when it was the primary carrier and should have paid the obligation. Under Pennsylvania law, where the wrongful acts of the Defendant have involved the Plaintiff in litigation with others or placed him in such relations with others as to make it necessary to incur costs and expenses to protect his interests, such costs and expenditures should be treated as legal consequences of the original wrongful act. *Orth v. Consumer's Gas Co.,* 280 Pa. 118, 121, 124 A. 296 (1924). That portion of the counsel fees incurred as a result of defending the underlying action are recoverable although those incurred in the indemnification action are not. *Boiler Engineering and Supply Co. v. General Controls, Inc.,* 443 Pa. 44, 277 A.2d 812 (1971).

Section 76 of the Restatement of Restitution also supports Plaintiff's position. It provides:

"A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

The rationale of Section 76 of the Restatement of Restitution has been adopted by the Pennsylvania courts. See, *Employers Mutual Liability Insurance Company of Wisconsin v. Melcher,* 378 Pa. 598, 107 A.2d 874 (1954); *Potoczny v. Vallejo,* 170 Pa.Super. 377, 85 A.2d 675 (1952). Pursuant to Section 80 of the Restatement of Restitution, this is a case where the person who has discharged the duty which as between himself and another should have been performed by the other and is entitled to indemnity. That person should receive reimbursement limited to the amount of his net outlay properly expended because the payor became a party to the transaction through the fault of the other.

The Defendant has raised the question of the statute of limitations. The applicable statute of limitations with respect to indemnification then in effect was six

years found in 12 P.S. § 31. The statute of limitations begins to run from the time judgment is entered or when Plaintiff finally pays the obligation or more than his share of it. *Wnek v. Boyle,* 172 Pa.Super. 222, 92 A.2d 701 (1952). All payments were made and the judgment was entered on or after February 16, 1973 and this suit was filed on January 14, 1977.

*CONCLUSIONS OF LAW*

1. The Court has jurisdiction of the subject matter of this case and the parties hereto by reason of the provisions of 28 U.S.C. § 1332.

2. The 1958 Pontiac operated by William Cunnard and which was involved in the accident of December 6, 1970, replaced the 1960 Plymouth and as such was a "newly acquired automobile" within the terms of the policy of insurance issued by Defendant, Nationwide Mutual Insurance Company.

3. Nationwide Mutual Insurance Company's denial of coverage to William Cunnard was wrongful, and the investigation conducted by Nationwide was negligent.

4. Aetna Casualty and Surety Company's expenditures in the amount of Thirty-Two Thousand Four Hundred Two Dollars and Seventy-Three Cents ($32,402.73) representing uninsured motorist payments and the defense of the uninsured motorist claim, were proximately caused by Defendant, Nationwide Mutual Insurance Company's wrongful denial of coverage.

5. The fact that Plaintiff did not file a declaratory judgment action is no defense in this matter.

6. Plaintiff is entitled to recover the entire amount of its damages and is not limited to the policy limit in effect between the Defendant and its insured.

7. This action was filed within the relevant statute of limitations.

8. A secondary insurer, such as the Plaintiff, has a cause of action against the primary insurer for wrongful refusal to provide coverage.

9. The Defendant must indemnify the Plaintiff in the amount of Thirty-Two Thousand Four Hundred Two Dollars and Seventy-Three Cents ($32,402.73).