WINSTON NETWORK, INCORPORATED, a Delaware corporation, Plaintiff–Appellee,

v.

INDIANA HARBOR BELT RAILROAD COMPANY, an Indiana corporation, Defendant–Cross–Plaintiff–Appellee,

v.

AETNA INSURANCE COMPANY, a Connecticut corporation, Defendant–Cross–Defendant–Appellant.

WINSTON NETWORK, INCORPORATED, a Delaware corporation, Plaintiff–Appellant,

v.

INDIANA HARBOR BELT RAILROAD COMPANY, an Indiana corporation, Defendant,

v.

AETNA INSURANCE COMPANY, a Connecticut corporation, Defendant–Appellee.

WINSTON NETWORK, INCORPORATED, a Delaware corporation, Plaintiff,

v.

INDIANA HARBOR BELT RAILROAD COMPANY, an Indiana corporation, Defendant–Cross–Plaintiff–Appellant,

v.

AETNA INSURANCE COMPANY, a Connecticut corporation, Defendant–Cross–Defendant–Appellee.

WINSTON NETWORK, INCORPORATED, a Delaware corporation, Plaintiff,

v.

INDIANA HARBOR BELT RAILROAD COMPANY, an Indiana corporation, Defendant–Counter–Plaintiff–Appellee,

v.

AETNA INSURANCE COMPANY, a Connecticut corporation, Defendant–Counter–Defendant–Appellant.

WINSTON NETWORK, INCORPO-
RATED, a Delaware corpora-
tion, Plaintiff–Appellee,

v.

INDIANA HARBOR BELT RAILROAD
COMPANY, an Indiana corporation,
Defendant–Appellant.

Nos. 90–1237, 90–1325, 90–1337, 90–
2360, 90–2766 and 90–2796.

United States Court of Appeals,
Seventh Circuit.

Argued May 8, 1991.

Decided Sept. 25, 1991.

John A. Dienner, III, argued, Lydon & Griffin, Chicago, Ill., for plaintiff-appellee Winston Network, Inc.

Diane I. Jennings, argued, Alvin E. Domash, Lord, Bissell & Brook, David F. Schmidt, Peterson & Ross, Chicago, Ill., for defendant-appellee Indiana Harbor Belt R. Co.

Jay S. Judge, Knight, Hoppe, Fanning & Knight, Des Plaines, Ill., John T. Burke, Burke & Associates, Chicago, Ill., for defendant-appellant Aetna Ins. Co.

Before WOOD, Jr., COFFEY and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On June 30, 1981, a train owned by the Indiana Harbor Belt Railroad ("IHB") toppled a scaffolding erected for the purpose of painting an advertisement on an IHB-owned bridge. A state court jury determined that the negligence of both IHB and Transportation Displays, Inc. ("TDI"), caused the accident, which injured one painter and killed another, and that the resulting damages were in excess of $2.4 million. That verdict was later affirmed on appeal. *Carter v. Indiana Harbor Belt R.R.*, 190 Ill.App.3d 1052, 547 N.E.2d 488, 138 Ill.Dec. 321 (1st Dist.1989).

The state court plaintiffs have since received payment and the only remaining issue is a quarrel between IHB, TDI, and TDI's insurer, Aetna Insurance Company ("Aetna"), regarding the ultimate liability for the underlying judgment. TDI's parent corporation, Winston Network, Inc. ("Winston Network"), filed this diversity, declaratory-judgment action seeking to determine the rights and responsibilities of the various parties. IHB thereafter filed a counterclaim against Winston Network and a cross-claim against Aetna. As the caption attests, none of the parties was entirely happy with the disposition below and the resulting appeals, cross-appeals, and protective appeals have been consolidated for more efficient review.

## I.

### A. *The Parties*

Winston Network is engaged in the business of outdoor advertising and TDI, its wholly owned subsidiary, specializes in advertising on property owned by railroads. Under the standard scenario, TDI contracts for rights to place advertising on the railroad's property and then seeks out advertisers. When it finds a willing advertiser, TDI sells that party an advertising license and shares the revenue with the railroad.

On November 15, 1980, Aetna issued a "Commercial Package Policy" that covered both Winston Network and TDI. This policy included general liability coverage for

TDI's own negligence. TDI had significantly more exposure, however, because each of its 300 railroad contracts included a promise to hold harmless and indemnify the railroad for any negligence on the part of either TDI or the railroad. In order to cover this additional exposure, the policy included coverage for liability assumed under "any contract or agreement relating to the conduct of the named insured's business."

IHB, the final party to this action, is a switching railroad that operates approximately forty miles of track. The railroad has always been a subsidiary—presently of the Consolidated Rail System ("Conrail"),[1] which in turn acquired the line from the Penn Central Railroad, which in turn inherited it from the New York Central Railroad. IHB has never functioned independently of its parent, which has, for example, always handled IHB's real estate transactions.

## B. *The Business Relationship Between TDI and IHB*

On July 17, 1951, the New York Central Railroad granted TDI an exclusive license to place advertising on New York Central's property in return for, *inter alia*, TDI's promise to hold harmless and indemnify New York Central. This base agreement was amended in 1961 to include "additional billboard rights on properties owned, leased, operated or controlled by [New York Central], specifically those of the IHB." The agreement was further amended in 1971 to include advertising rights on overhead bridges.

TDI and IHB continued to do business under the 1951 agreement even after control of IHB passed by merger to the Penn Central Railroad. When Conrail assumed control of the ailing Penn Central, it, too, was initially satisfied with the 1951 agreement. In 1980, however, Conrail decided to consolidate the motley collection of contracts that it had inherited from bankrupt railroads like Penn Central. It requested bids on an advertising management con-

tract that would cover the entire Conrail system. TDI won the bid and a new contract was executed on June 1, 1981.

The 1981 agreement purports to have been "made and entered into" by TDI and "CONSOLIDATED RAIL CORPORATION, a Pennsylvania corporation ... ('Conrail')." The agreement thereafter acknowledged that TDI was the successful bidder for the right to advertise "throughout Conrail's rail system." It then granted TDI "the exclusive right ... to use, as a license only, Conrail property for sign advertising purposes."

The remainder of the integrated agreement, which purports to be governed by Pennsylvania law, spelled out the terms under which the advertising license was granted. There are provisions, for example, wherein TDI agreed to procure liability insurance listing Conrail as a named insured.[2] TDI also promised to hold harmless and indemnify "Conrail, its officers, agents, and employees" from "any and all claims, suits, loss, costs, and liability, arising from, or in connection with ... any personal injury, death, or property damage, whatsoever." Other portions of the contract note that "Conrail" reserved absolute and unconditional discretion over all signs and that "Conrail" could terminate the agreement by giving notice. Finally, the agreement purports to abrogate all prior contracts "between TDI and the various predecessors of Conrail to the extent Conrail inured to the benefits and assumed the obligations of such contracts."

The 1981 agreement did not separately identify any of the dozens of railroads that make up the Conrail rail system, nor did TDI or Conrail believe it necessary to list each one individually. Prior to June 1, 1981, TDI looked to the 1951 agreement to determine a particular term or condition of its relationship with IHB; after June 1, 1981, TDI looked to the 1981 agreement. There was no change in the course of conduct between TDI and IHB after June 1, 1981, and TDI continued to place advertis-

---

1. Conrail owns only 51% of IHB; the Soo Line owns the remaining 49%.

2. TDI failed to add IHB's name to its insurance policy until after the accident occurred.

ing on IHB's property and pay a share of the advertising revenue to IHB.

### C. *The Accident and the* Carter *Litigation*

Sometime on or before May 15, 1980, a TDI employee prepared an application by Pal Construction Company for an advertising license for the north face of an IHB-owned bridge at 4901 South Western, Chicago, Illinois. A license was issued on May 26, 1981, and Pal Construction made arrangements for B & G Quality Signs to paint its advertisement. The B & G painters had attached their scaffolding to the viaduct and were in the process of painting the advertisement when a passing IHB train with a defective boxcar door snagged a hook on the scaffolding and caused it to collapse, killing one painter and wounding another.

Wrongful death and personal injury actions were thereafter commenced in state court, *see Carter v. Indiana Harbor Belt Railroad Co.*, 190 Ill.App.3d 1052, 547 N.E.2d 488, 138 Ill.Dec. 321 (1989), and both TDI and IHB were named as defendants. TDI tendered its defense of the suit to Aetna, which, pursuant to TDI's general liability coverage, assumed the defense and eventually paid TDI's portion of the judgment. IHB tendered its defense of the suit to TDI, which in turn tendered the defense to Aetna under its contractual liability coverage. Aetna refused to defend IHB, arguing generally that there was no indemnity contract between TDI and IHB and arguing specifically that IHB was not expressly named in TDI's policy and that the indemnity provision in the 1981 agreement did not cover IHB.

### D. *Proceedings Before the District Court*

In 1988, after the jury in *Carter* returned a $2.4 million verdict against TDI and IHB, Winston Network filed a complaint for declaratory relief seeking an adjudication of the parties' rights and respon-

sibilities under the 1951 and 1981 agreements. It also sought an adjudication of Aetna's liability under the contractual liability coverage. IHB, which was named as a defendant alongside Aetna, filed a counterclaim against Winston Network for breach of the 1951 and/or 1981 agreement to defend and indemnify. IHB also filed a cross-claim against Aetna for breach of its duty to defend and indemnify under the contractual liability coverage.

Winston Network and IHB initially attempted to resolve the dispute by means of motions for summary judgment. These motions took the position that the indemnity provision of the 1981 agreement covered IHB but that, if it did not, then the indemnity provision of the 1951 agreement was still in force insofar as IHB was concerned.[3] The district court rejected these motions after concluding that a question of fact existed as to which contract applied at the time of the underlying accident. The district court also determined that the term "Conrail" was ambiguous insofar as it was used in the 1981 agreement and therefore agreed that parol evidence was admissible to clarify the intent of those who entered into the agreement.

The case was tried before a jury which, after hearing three days of testimony, answered special interrogatories as follows:

1. The 1981 agreement between Winston Network and IHB's parent corporation, Conrail, governed the business relationship between Winston Network and IHB at the time of the underlying occurrence;

2. Winston Network did not breach its agreement to defend and indemnify IHB; and

3. Aetna breached its duty to defend and indemnify IHB.

The jury also returned general verdicts in favor of both Winston Network and IHB against Aetna and in favor of Winston Network and against IHB on IHB's counterclaim. On October 26, 1989, the district court directed entry of judgment on these

---

**3.** Aetna responded that neither agreement applied and argued that TDI and IHB had been operating under an oral license. At the close of the trial, the district court found no evidence to support this theory and Aetna has not pursued it on appeal.

verdicts and found that there was no just reason to delay enforcement or appeal. *See* FED.R.CIV.P. 54(b). Eight days later, an Illinois appellate court affirmed the jury's verdict in the state court litigation. *See Carter*, 190 Ill.App.3d 1052, 547 N.E.2d 488, 138 Ill.Dec. 321.

The parties in the federal suit filed timely post-trial motions, to which the district court responded by memorandum opinion dated January 5, 1990. That opinion denied motions by Winston Network and IHB to recover their attorneys' fees in the present litigation. It also denied Aetna's motion for judgment notwithstanding the verdict or a new trial. The opinion granted IHB's motion for judgment notwithstanding the verdict on its counterclaim against Winston Network.

Attached to the memorandum opinion was an order retroactively amending the October 26 judgment. That order entered judgment in favor of IHB and Winston Network on their claims against Aetna, entered judgment in favor of IHB on its claim against Winston Network, and declared that:

1. IHB was covered by the June 1, 1981, agreement in its dealings with Winston Network;
2. The 1981 agreement required Winston Network to indemnify IHB in the *Carter* litigation;
3. Aetna owed duties to both Winston Network and IHB to defend and indemnify IHB in the *Carter* litigation;
4. Aetna breached its duties to Winston Network and IHB when it refused to defend and indemnify the latter;
5. Winston Network owed a duty to IHB to defend and indemnify it in the *Carter* litigation; and
6. Winston Network breached its duty to defend and indemnify IHB.

The district court then ordered Aetna to pay IHB's costs, attorneys' fees, and share of the judgment in the *Carter* litigation, retaining jurisdiction for the sole purpose of calculating those amounts. The order failed to state the damages, if any, for which Winston Network was liable. And once again, the district court found that

there was no just reason to delay enforcement or appeal. *See* FED.R.CIV.P. 54(b). All three parties thereafter filed timely notices of appeal.

On January 31, 1990, IHB moved for entry of judgment on the reserved issue of damages. After further proceedings, the district court directed entry of a $1,681,193.14 judgment in favor of IHB and against Aetna on June 7, 1990. Aetna filed a notice of appeal from this judgment on June 19, 1990, and thereafter learned that IHB had filed a post-judgment motion on June 18, 1990. That motion, which purported to be filed under rule 59(e) of the Federal Rules of Civil Procedure, asked the district court to amend the June 7 judgment so as to reflect that Winston Network was also liable. The district court concluded that IHB's motion actually related to the January 5 judgment, not the June 7 judgment, and on August 6, 1990, denied it as untimely. IHB thereafter filed a notice of appeal from the June 7 judgment and the August 7 order. Aetna filed another notice of appeal to insure that its appeal from the June 7 judgment was preserved.

## II.

A. *Jurisdiction (Appeal Nos. 90–1237, 90–1325, and 90–1337)*

After the filing of the initial round of appeals, this court requested briefing on the issue of whether the district court's January 5 judgment was "final." In particular, we were concerned about the district court's decision to retain jurisdiction for the purpose of computing damages. As stated in *Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir.1985), *cert. denied sub nom. Belletire v. Parks*, 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653, and *cert. denied sub nom. Parks v. Belletire*, 474 U.S. 918, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985):

> A district court does not have carte blanche to certify an order for an immediate appeal under Rule 54(b). The order must finally dispose of a separate claim or a separate party. Normally an order that merely decides liability and leaves the determination of damages to future

proceedings does not finally dispose of any claim; it is just a preliminary ruling on the plaintiff's damage claim.

*Id.* at 1401.

After briefing, however, we are satisfied that we have jurisdiction over the first round of appeals. *Parks* states the general rule but it also states an exception—an immediate appeal from a liability judgment will be allowed if the determination of damages can be characterized as "ministerial." *Id.* The computation of damages in this case required nothing more than adding IHB's predetermined portion of the state court judgment,[4] with statutory interest, to IHB's defense costs in the state court litigation. That determination is viewed as "mechanical," *see, e.g., McMunn v. Hertz Equip. Rental Corp.*, 791 F.2d 88, 90–91 (7th Cir.1986); *see also Horn v. Transcon Lines, Inc.*, 898 F.2d 589 (7th Cir.1990), and, in any event, it has already been completed. *See Lovellette v. Southern Ry.*, 898 F.2d 1286, 1289 (7th Cir.1990) (judgment that becomes final while appeal is pending satisfies finality requirement). We therefore proceed to the merits.

### B. *Aetna's Appeals*

Aetna admits that it is liable to IHB if there was a valid contract of indemnity between IHB and TDI on June 30, 1981. According to Aetna, however, there was no contract of indemnity. And even if there was a contract of indemnity, it was void as against public policy.

#### 1. The Absence of a Contract of Indemnity

■ Aetna's first attack on the disposition below is an argument that the district court should not have admitted parol evi-

dence to define the term "Conrail" in the 1981 agreement. "Conrail" means "Consolidated Rail Corporation," Aetna argues, and nothing more. It does not mean "Conrail, its subsidiaries, and its affiliates," either as a matter of common sense or as a matter of law.[5] The term is not ambiguous and parol evidence was therefore inadmissible to prove that "Conrail" included IHB.

Aetna, however, has substantially eroded its own argument. In a reply brief, Aetna argues that the 1951 agreement was terminated, insofar as IHB was concerned, by language in the 1981 agreement that abrogated all prior contracts "between TDI and the various predecessors of Conrail (to the extent Conrail inured to the benefits and assumed the obligations of such contracts)." Under the terms of this provision, however, TDI's contracts with Conrail's predecessors (i.e., New York Central and Penn Central) were abrogated only insofar as they applied to "Conrail." Aetna's reply brief thus abandons the claim that "Conrail" means "Consolidated Rail Corporation" and adopts the position that "Conrail" means "Conrail, its subsidiaries, and its affiliates"—the very argument for which its opening brief criticizes Winston Network and IHB.

■ Irony aside, Aetna's argument acknowledges that the term "Conrail" is ambiguous. And under Pennsylvania law, which undisputedly governs the 1981 agreement,[6] parol evidence is admissible to interpret ambiguous terms. *Penn–DOT v. Mosites Constr. Co.*, 90 Pa.Commw. 33, 36–37, 494 A.2d 41, 43 (1985); *see Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 386, 476 A.2d 1, 5 (1984).[7]

■ The remainder of Aetna's argument on this issue appears to attack the jury's

---

**4.** Although the district court apparently was not aware of this fact on January 5, 1990, an Illinois appellate court had affirmed the judgment in *Carter* on November 3, 1989.

**5.** Citing *Walker v. Dominick's Finer Foods, Inc.*, 92 Ill.App.3d 645, 415 N.E.2d 1213, 47 Ill.Dec. 900 (1st Dist.1980), Aetna argues that, as a matter of law, a subsidiary is separate from its parent corporation.

**6.** Winston Network and IHB argue that Pennsylvania law applies because the parties to the 1981

agreement expressly chose Pennsylvania law to govern their contract. Aetna's opening brief argues that Illinois law applies but its reply brief on this matter later concedes that Pennsylvania law applies.

**7.** We would not reverse even if we accepted Aetna's arguments about the 1981 agreement. Aetna's opening brief specifically states that "TDI's authority to license advertising on the [IHB-owned] bridge . . . arose from one of two agreements:" the 1951 agreement (as amended) or the 1981 agreement. And if Aetna is correct

verdict. Nowhere, however, does Aetna explain the theory behind this attack (for example, that the district court should have granted a directed verdict or that the district court erred in denying post-trial motions for judgment notwithstanding the verdict and for a new trial).[8] The attack is also puzzling, moreover, because it assumes that this court will engage in de novo review of a jury verdict. Nothing could be farther from the truth. This circuit accords "great deference" to a jury's decision; " 'it is well-settled that a jury verdict will not be set aside if a reasonable basis exists in the record to support that verdict.' " *A. Kush & Assocs., Ltd. v. American States Ins. Co.*, 927 F.2d 929, 934 (7th Cir.1991) (quoting *Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 237 (7th Cir.1983)). Here, the record indicates that the jury had ample support for concluding that IHB was included in the 1981 agreement.[9]

### 2. The Invalidity of Any Contract of Indemnity

Aetna's second attack on the judgment is that any contract of indemnity would be unenforceable under either the anti-indemnity provisions of the Illinois Construction Contract Indemnification for Negligence Act, ILL.REV.STAT. ch. 29, paras. 61–63,[10] or the Illinois common law rule that agreements to indemnify a party for his or her own negligence must be clear and explicit. *See Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp.*, 395 Ill. 429, 70 N.E.2d 604 (1946). Even assuming, however, that Illinois would apply its anti-indemnity laws to a contract that purports to be governed by Pennsylvania law,[11] neither of these arguments is ultimately meritorious. The indemnity provision of the 1981 agreement does not fall victim to the Illinois anti-indemnity statute, and it is also sufficiently clear and explicit to satisfy Illinois common law.

■ "Stripped to its bare essentials, the Illinois [anti-indemnity] statute prevents indemnity against a party's own negligence in construction contracts." *Lovellette*, 898 F.2d at 1290. A construction contract, in turn, is defined as a contract "for the construction, alteration, repair or mainte-

---

about the 1981 agreement, then only the 1951 agreement remains and by Aetna's own admission it must apply. That agreement specifically names IHB, and it, too, contains an indemnity provision.

Aetna's only attempt to avoid the consequences of this admission comes in its argument that this court cannot affirm on the basis of the 1951 agreement because Winston Network and IHB failed to appeal the district court's denial of their motions for summary judgment. But this argument ignores settled principles of appellate law. Winston Network and IHB have a judgment proclaiming Aetna's liability, and we can affirm that judgment on any ground that finds support in the record. *E.g., DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 464 n. 10 (7th Cir.1990) (citing *Dairyland Financial Corp. v. Federal Intermediate Credit Bank*, 852 F.2d 242, 244 (7th Cir.1988)).

**8.** Aetna has also raised a number of other arguments without explaining their relevance. For example, Aetna has on several occasions portrayed itself as being misled by the text of the 1981 agreement when it issued the policy. At no point, however, does Aetna connect this portrayal to a specific argument for reversal. The argument, moreover, is not very convincing; Aetna issued its policy on November 15, 1980— well before the 1981 agreement was even drafted, much less signed.

**9.** Aetna's briefs also charge error in the jury's allegedly inconsistent answers to the special interrogatories. As the district court found, however (a finding that Aetna has not contested on appeal), this argument has been waived because Aetna failed to raise its objection before the jury was discharged. *See Strauss v. Stratojac Corp.*, 810 F.2d 679, 682–83 (7th Cir.1987).

**10.** The relevant paragraph reads as follows:

With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

*Id.* para. 61.

**11.** *Donaldson v. Fluor Engineers, Inc.*, 169 Ill. App.3d 759, 523 N.E.2d 1113, 120 Ill.Dec. 202 (1st Dist.1988), indicates that Illinois is willing to apply at least its anti-indemnity statute even if the parties expressly choose a foreign state's law to apply to their contract.

nance" of a structure. ILL.REV.STAT., ch. 29, para. 61.

Aetna's briefs focus primarily on the accident and argue that the painting of an advertisement on a railroad bridge is arguably "maintenance" or at least "alteration." The focus of the statute, however, is "contracts or agreements," not accidents, and the 1981 agreement does not obligate anyone to engage in activity that is even remotely construction-related. The agreement does envision that TDI will issue a license to a third party and that this third party may decide to paint an advertisement on a bridge, but this connection to construction (if painting an advertisement is, in fact, construction) is simply too attenuated. The statute, after all, applies to contracts *"for* the construction, alteration, repair or maintenance" of a structure, not to contracts *"having some connection with* the construction, alteration, repair or maintenance" of a structure. The 1981 agreement is an agency contract in which TDI agreed to solicit third parties to advertise on IHB property; it did not involve construction and the Illinois statute is therefore inapplicable.[12]

Aetna also argues that we should apply the Illinois statute even if no construction contract was involved. Yet Aetna offers no case law to justify this extension, and our review of Illinois law suggests that Aetna has it backwards. As we noted in *Rutter v. Arlington Park Jockey Club,* 510 F.2d 1065, 1069 (7th Cir.1975), Illinois courts will generally enforce contracts of indemnity against one's own negligence. *See also Davis v. Commonwealth Edison Co.,* 61 Ill.2d 494, 496, 336 N.E.2d 881, 883 (1975); *Burlington N.R.R. v. Pawnee Motor Serv. Co.,* 171 Ill.App.3d 1043, 1045, 525 N.E.2d 910, 912, 121 Ill.Dec. 603, 605 (1st Dist.), *appeal denied,* 123 Ill.2d 556, 535 N.E.2d 399, 128 Ill.Dec. 888 (1988).

This brings us to Aetna's contention that the indemnity clause is void because it fails to articulate in a clear and explicit manner that TDI must indemnify IHB for IHB's own negligence. *See Westinghouse,* 395 Ill. 429, 70 N.E.2d 604. There is little mystery, however, in the terms of the relevant provision: the 1981 agreement provides for indemnification "without regard to the acts, omissions, or negligence of any party." Aetna finds solace in the clause's failure to specify that TDI will provide indemnification for the negligent operation of a boxcar, but Illinois law does not require an indemnity provision to specify the cause of the injury. It only requires the provision to specify the indemnitor's duty to indemnify against the indemnitee's own negligence. *Burlington N.R.R.,* 171 Ill.App.3d at 1047–49, 525 N.E.2d at 913–14, 121 Ill.Dec. at 606–07 (soundly rejecting same argument advanced by Aetna). The indemnity provision in the 1981 agreement meets that requirement, and it is therefore enforceable. *See, e.g., id.* at 1043, 525 N.E.2d 910, 121 Ill. Dec. 603 (finding specific and enforceable a contract providing for indemnification regardless of whether injury was "contributed to by the sole or partial negligence" of indemnitee).

### C. *Winston Network's Cross–Appeal*

Winston Network appeals only from the district court's denial of its request for attorneys' fees under section 155 of the Illinois Insurance Code. ILL.REV.STAT., ch. 73, para. 767 (allowing insured to recover attorneys' fees from insurer under specified circumstances). As Winston Network is well aware, however, section 155 applies only when an insurance company's delay in settling a claim is "vexatious and unreasonable," *id.,* and the district court found that Aetna's conduct was neither. That finding " 'will not be disturbed unless an abuse of discretion is demonstrated on the record,' "[13] and there is no indication on

---

**12.** In *Fort Wayne Cablevision v. Indiana & Mich. Elec. Co.,* 443 N.E.2d 863 (Ind.Ct.App.1983), an Indiana appellate court, interpreting a comparable Indiana statute, concluded that it did not apply to a contract granting a license to use real property. This case appears to support an alter-

native basis for concluding that the Illinois statute does not apply here.

**13.** *Rosenburg v. Lincoln Am. Life Ins. Co.,* 883 F.2d 1328, 1335 (7th Cir.1989) (quoting *Fassola v. Montgomery Ward Ins. Co.,* 104 Ill.App.3d

this record that such an abuse of discretion has occurred. We therefore affirm the district court's refusal to award attorneys' fees to Winston Network.

As an initial matter, we note that Winston Network itself has never taken a firm stance on which agreement—1951 or 1981—governed TDI's relations with IHB. Yet that should not matter, under Winston Network's argument, because at least one of the agreements must have applied and because both agreements contained indemnity provisions. The only way that both agreements would not apply is if "Conrail" meant "Consolidated Rail Corporation" in the indemnity clause of the 1981 agreement but "Conrail, its subsidiaries, and its affiliates" in the clause canceling all prior agreements. And there is no possibility, according to Winston Network, that the same word could have two different meanings in the same agreement.

As Aetna pointed out in its briefs and at oral argument, and as should be evident from our discussion so far, the 1981 agreement is not an example of good draftsmanship. One of the clauses, for example, permits "Conrail" to terminate the agreement by giving timely notice. Another clause reserves to "Conrail" an absolute and unconditional discretion over all signs. Under Winston Network's approach (in which Conrail must mean "Conrail, its subsidiaries, and its affiliates"), it appears that any one subsidiary or affiliate, no matter how lowly, had the right to cancel the entire agreement simply by giving the requisite notice. It also appears that any subsidiary or affiliate had the right to exercise an absolute veto power over any advertisement, wherever located. Surely, Aetna claims, this cannot be the intent of the parties to the agreement.

All of this suggests that maybe Winston Network and IHB, too, were relying on a theory in which "Conrail" had different meanings depending on the clause in which it was found. This realization, in turn, suggests that Aetna's position may not be so unreasonable after all. Aetna may not be correct—the jury, in fact, concluded that Aetna was incorrect—but an insurer need not be correct in order to avoid liability under section 155. The inquiry should determine whether the insurer had good faith, and there is evidence of good faith on this record.

Another theme of Winston Network's argument is that the parties to the 1981 agreement knew what it meant, that those dealing with railroads would know what it meant and, therefore, that Aetna should have known what the agreement meant. Aetna was not a party to the agreement, however, and it is in the insurance business, not the railroad business. Aetna cannot be held, therefore, to have the knowledge that Winston Network would seek to impute to it.

Most important, Winston Network's arguments appear too focused. A proper inquiry under section 155 must look at "the totality of the circumstances," not just a select portion. *Rosenburg*, 883 F.2d at 1335. This particular conflict developed gradually and the parties' present arguments went through periods of significant development before they achieved their present complexity. The district court, which was able to observe the entire course of this litigation, concluded that Aetna had not been "unreasonable and vexatious" in delaying settlement, and Winston Network has offered no real basis for undermining that conclusion. Although Winston Network blames this litigation entirely on Aetna, it would do well to remember that this suit might have been unnecessary had the parties to the 1981 agreement been more precise in their language.[14]

825, 832, 433 N.E.2d 378, 383, 60 Ill.Dec. 581, 586 (3d Dist.1982)).

**14.** Winston Network's reply brief invoked section 155 as a basis for requesting attorneys' fees for this appeal. If Aetna's conduct in appealing was "unreasonable and vexatious," however, then it was "unreasonable and vexatious" when Winston Network filed its initial brief and the request for fees should have been made at that time. "A reply brief shall be limited to matter in reply," and Winston Network's belated request comes too late for proper consideration. 7TH CIR.RULE 28(f).

## D. *IHB's Cross-Appeals*

### 1. Attorneys' Fees (No. 90–1337)

■ IHB, too, has asked for its attorneys' fees and costs in this litigation, although under different theories than the one advanced by Winston Network. Instead of the Illinois Insurance Code, IHB claims litigation expenses under both Pennsylvania common law and Pennsylvania contract law. IHB also claims that both Winston Network and Aetna are responsible for its expenses.

The easiest place to begin is the 1981 agreement, which in relevant part states:

> 9. TDI, as part of the consideration of the rights granted by this Agreement, and without regard to the acts, omissions, or negligence of any party, and while acting under color of this Agreement, hereby covenants and agrees to hold Conrail, its officers, agents and employees, harmless from, and *to indemnify and defend Conrail,* its officers, agents, and employees, *against any and all claims, suits, loss, costs, and liability, arising from, or in connection with:*
>
> .      .      .      .      .
>
> (b) any personal injury, death, or property damage whatsoever;
>
> .      .      .      .      .
>
> (e) *the inclusion of Conrail in, or addition of Conrail to, any civil or criminal action [besides any such action arising from (a), (b), (c), or (d) of this section 9] arising from the contractual relationship with TDI under this Agreement.*

IHB argues that the emphasized portions of this clause are sufficiently specific to allow the recovery of its attorneys' fees and costs in this litigation. In support of that argument, it cites *Fidelity–Philadelphia Trust Co. v. Philadelphia Transportation Co.,* 404 Pa. 541, 173 A.2d 109 (1961), in which the Pennsylvania Supreme

Court held that a clause requiring the indemnitor to "reimburse the Trustee for all its expenditures, and to indemnify and save the Trustee harmless against any liabilities which it may incur" was sufficiently specific to include attorneys' fees. *Id.* at 548, 173 A.2d at 113–14.

It is unclear whether the district court addressed this argument, but it involves a question of law and is therefore fair game for an appellate court. And in light of the Pennsylvania Supreme Court's conclusion in *Fidelity–Philadelphia Trust Co.,* the language in the 1981 agreement certainly appears broad enough to include attorneys' fees and costs (even though they are not expressly mentioned). If there were any doubts, however, the briefs before this court present no meaningful resistance to IHB's argument. Winston Network, for example, does not even address this portion of IHB's cross-appeal.[15] Aetna has responded to IHB's claim but maintains only that a party cannot by express contract agree to indemnify another for litigation expenses incurred in an action to obtain indemnification. But the case cited to support this proposition, *Aetna Cas. & Surety Co. v. Nationwide Mut. Ins. Co.,* 471 F.Supp. 1059 (M.D.Pa.1979), *aff'd,* 620 F.2d 287 (3d Cir.1980), simply does not support Aetna's argument. It does suggest that Pennsylvania common law might not support IHB's request for attorneys' fees and costs, *id.* at 1067, but it does not in any way prohibit IHB from expressly contracting for payments that the common law might not otherwise imply.[16] Under these circumstances, it is appropriate that IHB receive from Winston Network and Aetna its attorneys' fees and costs in this litigation.[17]

### 2. Money Judgment Against Winston Network (No. 90–2796)

The second issue in IHB's cross-appeal raises another jurisdictional question. Spe-

---

**15.** In fact, Winston Network has not challenged any portion of IHB's cross-appeal.

**16.** Aetna also relies on Illinois law but, in contrast to the indemnity context, cites no cases in which a court applied Illinois law on attorneys' fees to an agreement that purports to be gov-

erned (and, as Aetna concedes, is governed) by non-Illinois law.

**17.** In light of our resolution of the claim for fees under Pennsylvania contract law, it is unnecessary for us to comment on IHB's argument for fees under Pennsylvania common law.

cifically, what was the effect of IHB's June 18 motion? If IHB's motion was a timely rule 59(e) motion to alter or amend the judgment, then Aetna's first notice of appeal from the June 7 judgment (No. 90–2360) "is not worth the paper it is written on." FED.R.APP.P. 4(a)(4); *see Alerte v. McGinnis*, 898 F.2d 69, 71 (7th Cir.1990). Aetna has wisely prepared for this possibility, however, by filing a protective notice of appeal after the district court denied IHB's motion (No. 90–2766). If IHB's motion was not a timely rule 59(e) motion, then Aetna's first notice of appeal from the June 7 judgment is valid and the protective notice of appeal is mere surplusage.

With this background in mind, we turn to the motion itself, which asked the district court to add the following paragraph to its June 7 judgment:

> It is further ordered that Plaintiff–Counterdefendant Winston Network, Inc., shall be liable to the Indiana Harbor Belt Railroad Company for payment of any amount of said judgment that Aetna fails or is unable to pay....[18]

As the district court pointed out, however, jurisdiction was retained only to determine the actual dollar amount due IHB, and IHB's post-judgment motion did not raise any issues with respect to the amount of damages. Instead of relating to the question of *how much* was owed, IHB's motion was addressed to the question of *from whom* such amounts were owed. The district court's ruling on that issue had been set forth over six months earlier, in the January 5 judgment, and only Aetna was listed as owing damages.

■ We agree with the district court, therefore, that IHB's June 18 filing was not a timely rule 59(e) motion. In order to be timely, a rule 59(e) motion must be filed "not later than 10 days after entry of the judgment" it seeks to alter or amend. FED.

R.CIV.P. 59(e). IHB's motion was submitted well over six months after the judgment it sought to alter or amend. Appeal no. 90–2360 is therefore valid, and appeal no. 90–2766 is a safety precaution that turned out to be unnecessary.

■ We cannot stop here, however. IHB's August 15 notice of appeal (No. 90–2796) was untimely insofar as the June 7 judgment was concerned; both the thirty-day period after entry of judgment and the fourteen-day period after filing of Aetna's June 19 notice of appeal had long since passed. FED.R.APP.P. 4(a)(1), (3). It was not untimely, however, insofar as the district court's August 3, 1990, ruling on the post-judgment motion was concerned. We therefore have jurisdiction over Aetna's appeal from the denial of its post-judgment motion.

This concession does little for IHB. Rule 59(e) contains a specific time limit and the district court has no discretion whatsoever to extend that limit. FED.R.CIV.P. 6(b); *see also Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 761, 112 L.Ed.2d 780 (1991); *Green v. Bisby*, 869 F.2d 1070, 1072 (7th Cir.1989). Nor can Winston Network extend that time limit by its failure to defend the appealed ruling. As the Fifth Circuit stated in *Flores v. Procunier*, 745 F.2d 338, 339 (5th Cir.1984), *cert. denied,* 470 U.S. 1086, 105 S.Ct. 1851, 85 L.Ed.2d 148 (1985), "The time limit fixed by Rule 59(e) is jurisdictional: it may not be extended by waiver of the parties or rule of the district court." The district court could not have granted the relief sought by IHB's untimely motion. Its denial of the motion must therefore be affirmed.[19]

## III.

The district court's denial of litigation expenses to IHB is REVERSED and REMAND-

---

**18.** IHB also suggested a provision whereby Winston Network would be subrogated to the rights of IHB against Aetna to the extent that Winston Network made any payments to IHB. IHB's initial brief does not charge error in the denial of this portion of its request and we therefore do not interpret it to be a part of IHB's cross-appeal.

**19.** It is certainly true that IHB's motion might have been timely if filed under rule 60(b) of the Federal Rules of Civil Procedure, but IHB has never claimed that its motion was anything other than a rule 59(e) motion.

ED for an assessment of IHB's costs and attorneys' fees in this litigation. With that one exception, the remainder of the disposition below is AFFIRMED.